

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

PTH:LAB
F. # 2002V00395

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 14, 2022

By ECF

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Luis Angel Ramos
             Criminal Docket No. 1:03-CR-315 (ERK)

Dear Judge Korman:

      The government respectfully submits this letter in opposition to the defendant Luis Angel Ramos' pro se motion for compassionate release pursuant to Title 18, United States Code, Section 3582(c)(1)(A). See Def.'s Motion for a Reduction in Sentence, Dkt. No. 184 (the "Motion"). Ramos' submission does not overcome his failure to present an extraordinary and compelling reason for his early release nor does it overcome the weight of the sentencing factors in 18 U.S.C. § 3553(a). For the reasons set forth below, the Motion should be denied.

I.      Background

      Ramos is currently serving a life sentence for acts committed between 1990 and 1999 relating to his involvement in a violent criminal enterprise. He was convicted at trial in 2005. At the time of his federal sentencing, he was serving a 10-year to life sentence for state charges. He is currently serving his federal sentence at USP Lee in Virginia.

      A.      Ramos' Involvement in the Woodbine Crew Criminal Enterprise

      On June 10, 2004, Ramos was convicted in a jury trial of conspiracy to commit racketeering, 18 U.S.C. § 1962(d); conspiracy to commit robbery, 18 U.S.C. § 1951(a); and brandishing a firearm, 18 U.S.C. § 924(c)(1)(A)(ii). See Presentence Investigation Report ("PSR"). Ramos' convictions related to his involvement between 1990 and 1999 in a criminal enterprise known as the Woodbine Crew which primarily operated in the Bushwick neighborhood of Brooklyn, New York. PSR § 17. The objective of the criminal enterprise was to generate money for its members and to preserve and protect the group's drug trafficking and robbery activities through "murder, assault, torture, kidnapping, robbery and arson." Id. § 18. Ramos' convictions relate to two murders and a robbery described herein.

1. The Murder of Hernando Enciso Valencia

On August 8, 1994, Ramos called a rival drug dealer, named Hernando Enciso Valencia, and told him to come to Ramos' apartment to negotiate a drug deal. Id. § 58. Ramos and others proceeded to hold Valencia at gunpoint to torture him. Id. §§ 58-59. An associate of Ramos' tortured Valencia by "hitting, slashing, and stabbing him and placing a hot spoon to Valencia's penis in an attempt to make Valencia tell them where he kept his drugs and money." Id. § 59. Ramos and others then took turns strangling Valencia, which led to his death. Id. § 60. Valencia's body was discarded in a garbage can which was placed in Valencia's car. Id. Ramos subsequently drove Valencia's car with his body in it, away from the scene of the crime, and a police chase ensued. Id. § 61. The chase ended with Ramos abandoning the car and fleeing. Id.

2. The Murder of Luis Munoz

On September 4, 1994, Ramos and others traveled to the residence of Luis Munoz, a rival drug dealer, and entered through a window. Id. § 62. Munoz was then kidnapped and brought to the basement of an associate of Ramos'. Id. Ramos and others then attempted to obtain a ransom of $80,000 from Munoz's family located in Colombia. Id. § 63. When the ransom was not paid, Munoz was shot in the back of the head by an associate of Ramos' in the bushes near the Interboro Expressway. Id.

3. The Robbery of John Romero and Angel Silva

Members of the Woodbine Crew, including Ramos broke into an apartment where John Romero and Angelo Silva, rival drug dealers, were selling heroin. Id. §§ 67-68. Ramos stole the drugs on the dining room table. Id. § 68. Both Romero and Silva received injuries during the course of the robbery due to the actions of Ramos' associates which required medical attention. Id. §§ 68-69. Romero's ear was cut from top to bottom with a knife and Silva's finger was cut "nearly severing the digit." Id. § 68.

B. Sentencing

On September 30, 2005, Ramos was sentenced to life on the racketeering charge, 140 months' imprisonment on the conspiracy to commit robbery charge, and 84 months' imprisonment on the firearm charge. Sentencing Tr. at 22:22-23:8. At the time of sentencing, Ramos was in Criminal History Category VI and was a career offender. PSR § 186. At the time of sentencing, he was already serving a 10-year to life sentence imposed by state court for robbery. Sentencing Tr. at 14:1-5.

II.  Ramos' Motion

Ramos states that he has served 26 years of his federal life sentence.  See Motion at 18.  Ramos filed his compassionate release motion on January 28, 2022.  Id. at 1.  Prior to this, on June 25, 2021, Ramos submitted a request for compassionate release to J.C. Streeval, Warden of USP Lee, the facility in which Ramos is currently housed.  Id. at 3.  The Warden denied the request on July 1, 2021, on the basis that granting Ramos' request would "minimize the severity" of his offenses.  Motion Exhibits ("Motion Ex.), Dkt. 184-1 at Ex. A at 2.

Ramos' request before this Court is based on two purportedly extraordinary and compelling reasons: (1) that Ramos saved a correctional officer's life in 2008 while incarcerated at Sing Sing Prison in New York and (2) multiple medical issues that "culminate into serious and debilitating and/or life threatening conditions."  Motion at 1.  Ramos further asserts that these two bases, together and standing alone, coupled with evidence of his rehabilitation provides a sufficient basis for his release.  Id. at 1-2.  In support of his rehabilitation, Ramos' has submitted with his motion his federal inmate progress reports from 2021, progress reports from his time in state custody, as well as various education reports.  See Motion Ex. G, J, K, L.  He also submitted a letter in support of his motion, Dkt. 185, an offer letter of employment from New Era Mechanical Corporation, Motion Ex. I, as well as a number of character reference letters.  Motion Ex. M, N; see also Dkt. 187, 188.

Ramos' motion also includes a request that the Court consider the fact that his co-defendant, Roderick Soto, has recently received a sentence reduction.  Motion at 17.

   A.  Saving a Correctional Officer's Life

The factual basis for Ramos' first extraordinary and compelling reason relates to an incident that took place while he was serving his state sentence in Sing Sing Prison in New York.  See Motion at 7-10.  Ramos states that in 2008 he aided Officer Luciano, a correctional officer, when he became injured through an accident on the job.  Id. at 7.  In support of his motion, Ramos attached a letter from Officer Luciano.  Motion Ex. B.  The letter acknowledges that Ramos found Officer Luciano and stayed with him after he suffered an injury that rendered him immobile, while another inmate went to seek help.  Id.

   B.  Medical Conditions

By his own admission, Ramos has received the COVID-19 vaccine.  Motion at 12. Ramos' motion outlines a number of medical conditions from which he alleges he is suffering, including malignant melanoma, basal carcinoma, ischemic heart disease, hyperlipidemia, diaphragmatic hernias, pre-diabetes, and "suspected" glaucoma.  Motion at 11-12. Based on these conditions, he asks the Court to take notice that such comorbidities "might" increase his risk for severe illness from COVID-19.  Id. at 13.

III.     Ramos Should Not Be Afforded Compassionate Release

As the movant, the defendant bears the burden of proving that he is eligible for a sentence reduction. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992). The Court "may reduce the term of imprisonment . . . after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(C)(1)(a)(i). If a defendant demonstrates that he has exhausted his administrative remedies with the Bureau of Prisons ("BOP"), the Court must then consider whether "extraordinary and compelling" circumstances exist.[1]

A court may grant a motion for compassionate release only when both "extraordinary and compelling reasons" warrant early release and the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of release. 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Roney, 833 F. App'x 850, 853 (2d Cir. 2020) (explaining that, even if the defendant presented extraordinary and compelling reasons for release, his motion could be denied based solely on a consideration of the 3553(a) factors); United States v. Fragoso, No. 18-CR-179 (JMA), 2021 WL 5205633, at *2 (E.D.N.Y. Nov. 9, 2021) (same). These Section 3553(a) factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed; and the need to avoid unwarranted sentence disparities. See 18 U.S.C. § 3553(a).

   A.     Ramos Has Not Established an Extraordinary or Compelling Reason to Justify His Release

A defendant might show an extraordinary and compelling reason for early release, where, for example, a "defendant is suffering from a terminal illness" or where a defendant is "suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sentencing Guidelines § 1B1.13 comment n.1(A). The general threat of COVID-19 does not alone provide a basis for a sentence reduction. United States v. LoCascio, No. 90-CR-1051, 2020 WL 12719849, at *4 (E.D.N.Y. July 17, 2020) ("the threat of exposure to the coronavirus does not invite an extraordinary and compelling reason to warrant granting a petition for compassionate release.")

---

[1] The government does not dispute that the defendant has exhausted his administrative remedies.

The undersigned obtained Ramos' medical records for the present through 2021 from the BOP. See Gov't Ex. A.[2] Ramos only appended a small sample of medical documents from 2017 to his motion. See Motion Ex. F. Based on his full set of recent medical records, Ramos does not have any conditions that establish an extraordinary and compelling reason for early release, with or without the threat of COVID-19. See Gov't Ex. A. Ramos is vaccinated, his current medical conditions are managed, and he is able to perform his daily activities independently. Id.; see United States v. Lino, No. 02-CR-307-8 (NGG), 2021 WL 5759699, at *2-3 (E.D.N.Y. Dec. 3, 2021) (finding that cancer where managed did not rise to an extraordinary or compelling reason where the defendant was vaccinated, received medical care, and could perform daily activities independently); United States v. Murph, No. 08-CR-322 (JMA), 2020 WL 3256364, at *3 (E.D.N.Y. June 16, 2020) (finding no extraordinary and compelling reasons were medical records showed that the defendant received regular treatment and could manage his conditions); United States v. Mood, 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication").

Ramos cites a number of cases from 2020 for support that his medical conditions provide a basis for compassionate release. These cases are inapposite because COVID-19 is a diminished threat to Ramos, as he is vaccinated and is receiving adequate medical treatment in custody at USP Lee.[3] See Gov't Ex. A at 60; United Sates v. Mena, No. 16 CR. 850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) ("Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines."); States v. Jaber, No. 13 Cr. 485 (CM), 2022 WL 35434, at *2-3 (S.D.N.Y. Jan. 4, 2022) (same). The circumstances since 2020 have

---

[2] The government has sought leave to file Gov't Ex. A under seal because Ramos' medical records contain health information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

[3] C.f. United States v. Hurst, No. CR 08-00386, 2020 WL 7490232, at *3 (W.D. Pa. Dec. 21, 2020) (granting compassionate release where the defendant suffered from hyperlipidemia and had limited ability to provide self-care and where there were 609 active cases at the prison); United States v. Jones, No. 13-CR-577-2, 2020 WL 3892960, at *1, 4-6 (E.D. Pa. July 9, 2020) (granting compassionate were the defendant's medical conditions made him particularly vulnerable to covid and where vaccinations were not yet available to inmates); United States v. Zoquier-Solano, No. 13-CR-772 (JPO), 2020 WL 6193859, at *1-2 (S.D.N.Y. Aug. 10, 2020) (granting compassionate release where the pandemic posed extraordinary health challenges and the defendant could not provide self-care); United States v. Pena, 459 F. Supp. 3d 544, 551 (S.D.N.Y. 2020) (granting compassionate release because the COVID polices were insufficient to protect the inmate); United States v. Gardner, No. 14-CR-20735-001, 2020 WL 4200979, at *6-7 (E.D. Mich. July 22, 2020) (granting compassionate release where defendant had debilitating medical issues and there was insufficient testing); United States v. Nazzal, 466 F. Supp. 3d 753, 758 (E.D. Mich. 2020) (granting compassionate release due to inmate infections); United States v. Readus, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (granting compassionate release where there was insufficient testing).

drastically changed and Ramos does not face the same vulnerabilities as the inmates in the cases on which he relies. He is vaccinated, as are the majority of his fellow inmates, and testing is now widely available. Specifically, USP Lee has made and continues to make significant efforts to respond to the threats posed by the pandemic. There have been no inmate and no staff deaths at the facility caused by COVID-19. See BOP COVID-19 statistics by facility, at https://www.bop.gov/coronavirus/, last visited on March 14, 2022). As of today's date, only one inmate of USP Lee's total inmate population is currently positive for COVID-19. Id.[4] No staff members are currently positive. Id. Vaccination has also been central to USP Lee's plan to guard against the risks posed by COVID-19. To date, 944 out of 1,332 inmates or 71% of USP Lee's inmates have been fully vaccinated. BOP COVID-19 statistics by facility, at https://www.bop.gov/coronavirus/, last visited on March 14, 2022.

Ramos has failed to meet his burden to establish an extraordinary or compelling reason for release based on his medical conditions or the threat of COVID-19. Nor is his act of assisting Officer Luciano sufficient. While his aid to Officer Luciano was a commendable act, it was an isolated act that occurred 14 years ago. Further, Ramos has not had a blemish-free record since his time in custody.[5] In 2004 he received an infraction for assault, in 2015 he received one for smoking and possessing tobacco, and in 2016 he received one for possessing sharpened metal and sharpened plastic. Gov't Ex. B. In addition, his underlying criminal convictions were so egregious and violent that reform predicated on vocation classes and the like is insufficient to establish rehabilitation. See, e.g., Speed v. United States, No. 04-CR-336 (PKC), 2021 WL 1085360, at *4 (S.D.N.Y. Mar. 22, 2021) ("[The defendant's] extended trail of violent crimes counsels against a reduction in sentence."). United States Sentencing Commission data also shows that there is a substantial risk of recidivism for Ramos, see Speed, 2021 WL 1085360, at *4 (considering Sentencing Commission recidivism statistics). Law enforcement re-arrest about 37% of defendants who, like Ramos, are over 50 and were imprisoned for violent crime. See Recidivism Among Federal Violent Offenders, at 44, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf (Jan. 2019). Law enforcement officers also re-arrest about 87% of defendants who, like Ramos, had a Criminal History Category VI and were imprisoned for violent crime at the time of sentencing. See id. at 30.

Ramos also asserts that his sentence should be reduced because his co-defendant, Soto, received a reduced sentence. Mot at 17. While the court may consider the severity of Ramos' sentence as compared to a co-defendant as an extraordinary and compelling reason, there is no public record for the basis of Soto's sentence reduction. United States v. Haynes, 456 F.

---

[4] USP Lee currently houses 1,332 inmates. See USP Lee, at https://www.bop.gov/locations/institutions/lee/, last visited on March 14, 2022.

[5] Again, Ramos cites cases that contain factual circumstances different from his circumstances. C.f. United States v. Cruz, No. 3:94-CR-112 (JCH), 2021 WL 1326851, at *8 (D. Conn. Apr. 9, 2021) (granting compassionate release where after 26 years in custody the inmate had no disciplinary tickets); United States v. Perez, No. 3:02CR7 (JBA), 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021) (granting compassionate where defendant had a compelling record of rehabilitation).

Supp. 3d 496, 514 (E.D.N.Y. 2020); United States v. McDonald, No. 94-CR-20256-1, 2020 WL 3166741, at *7 (W.D. Tenn. June 8, 2020); see Dkt. 177, 178. Upon review of Soto's sealed sentencing transcript from January 29, 2020, the government takes the position that there is no basis to reduce Ramos' sentence in light of Soto's reduction. Soto's reduction was not based off a request for compassionate release and related to circumstances unique to Soto. See Dkt. 177, 178.

  B. The 3553(a) Factors Weigh Against Ramos' Release

  Even if the Court were to find that "extraordinary and compelling" circumstances are present, the Section 3553(a) factors weigh against compassionate release, which alone serves as a basis to deny Ramos' Motion. See United States v. Keitt, 21 F.4th 67, 69 (2d Cir. 2021) (per curiam) ("we today make clear that when a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction").

  The relevant § 3553(a) factors include the nature and circumstances of the crime and history of the defendant, the need for the sentence imposed to reflect the seriousness of the offense and to afford adequate deterrence to criminal conduct, and the sentences available. 18 U.S.C. § 3553(a). The nature and circumstances of the offense weigh heavily against Ramos' early release, as he was involved in a violent criminal enterprise where he participated in robberies and the murder of two people. A consideration of the factors above shows that release at this point is inappropriate based on the offense of conviction and Ramos' managed medical conditions. United States v. LoCascio, No. 90-CR-1051, 2020 WL 12719849, at *6 (E.D.N.Y. July 17, 2020) (denying compassionate release where the defendant had managed medical conditions and was sentenced for serious racketeering crimes); Lino, 2021 WL 5759699, at *3 (same). The court aptly noted during Ramos' sentencing in 2005, "I think that on reflection, the sentence that the guidelines require is a reasonable and just sentence in this case. The defendant, age 38, was involved in multiple robberies and [kidnappings] during which victims were tortured and murdered. He's a career offender with a history of violent crimes and drug offenses which began at the age of fifteen." Sentencing Tr. at 22:3-9.

IV.     Conclusion

    For the reasons set forth above, the government respectfully submits that the defendant's Motion should be denied.

                                            Respectfully submitted,

                                            BREON PEACE
                                            United States Attorney

                                    By:     /s/ Lauren A. Bowman
                                            Lauren A. Bowman
                                            Assistant U.S. Attorney
                                            (718) 254-6047


Cc:     Clerk of Court (ERK) (By ECF)
        Defendant Luis Angel Ramos, pro se (First Class Mail)